UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

TRACY D. ANDERSON,

                    Plaintiff,          12-CV-0200(MAT)

           v.                           **DECISION**
                                        **and ORDER**
CAROLYN M. COLVIN,
Commissioner
of Social Security,[1]

                    Defendant.

───────────────────────────────

## <u>INTRODUCTION</u>

     Plaintiff Tracy D. Anderson ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##7, 8.

## <u>BACKGROUND</u>

     On May 20, 2008, Plaintiff filed an application for SSI alleging disability beginning December 20, 2007, due to back problems, high blood pressure, asthma, and mental problems.

──────────────────

[1]
     Carolyn M. Colvin is automatically substituted for the previously named defendant, Michael Astrue, pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

T.83-88, 103.[2] Her application was denied on August 8, 2008, and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). T.53, 60. Plaintiff's hearing was conducted before ALJ Robert T. Harvey on May 18, 2010. T.32-52. A written decision was issued on June 21, 2010, finding that Plaintiff was not disabled. T.21-28.

In applying the five-step sequential analysis, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ found that Plaintiff had the severe impairments of discogenic lumbar spine and polysubstance abuse, and that those impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpart P, Appendix 1. T.23-24. Because Plaintiff could not be found disabled at the third step, the ALJ proceeded to determine that Plaintiff retained the residual functional capacity ("RFC") to do light work, with the exception of climbing ropes, ladders, or scaffolds; working in areas with unprotected heights; working around heavy, moving, or dangerous machinery; and being exposed to dampness. T.24. The ALJ further found that Plaintiff had occasional limitations in bending, climbing, stooping, squatting, kneeling, and crawling. Id. Relying on the Medical-Vocational Guidelines, the ALJ found that Plaintiff could perform work in the national economy, and concluded that Plaintiff was not disabled. T.28.

---

[2]

Numerals preceded by "T." refer to pages from the transcript of the administrative record, submitted by the Commissioner as a separately bound exhibit in this proceeding.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 26, 2011. T.10-15. Plaintiff then filed this action. Dkt. #1.

In the present motion, Plaintiff alleges that the decision of the ALJ is erroneous and not supported by substantial evidence because (1) the ALJ erred when he found Plaintiff's depression to be a non-severe impairment; (2) the ALJ failed to develop the record and erroneously determined Plaintiff's RFC; (3) the ALJ applied an improper standard in assessing Plaintiff's credibility; and (4) the ALJ erred in failing to consult a vocational expert at Step 5 of the sequential analysis. Pl. Mem. (Dkt. #7-1) at 8-18. The Commissioner cross-moves for judgment on the pleadings, arguing that the ALJ's decision is legally correct and is supported by substantial evidence. Comm'r Mem. (Dkt. #9) at 12-24.

For the following reasons, Plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

## DISCUSSION

### I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

## II.  <u>Medical Evidence</u>

### A.    Treating Sources

In June and July, 2002, prior to the alleged onset date of disability, Plaintiff received drug rehabilitation treatment at Brylin Hospital pursuant to a court order. T.151-91. Upon discharge, Plaintiff was diagnosed with cocaine use, alcohol abuse, and fibrocystic breast disease. T.152.

From August 2006, through February 2007, Plaintiff received outpatient mental health treatment from Horizon Health Services. She had referred herself to counseling after attempting to cut her wrists. T.200. Plaintiff reported using alcohol on a daily basis, and was diagnosed with major depressive disorder and alcohol abuse. T.198. Medication was not recommended. T.200. After Plaintiff stopped attending appointments and did not respond to further communications from Horizon, she was terminated as a patient. T.200.

Plaintiff visited Erie County Medical Center ("ECMC") on multiple occasions from 2007 to 2009 with complaints of back pain. T.204-07, 211, 230-37, 293-94, 296-97, 313, 316, 320, 404-05, 416-19, 446-47.

A lumbar spinal image taken on May 14, 2007, revealed normal sacroiliac joints. T.211. She attended a single physical therapy appointment at ECMC on June 11, 2007, and reported a 60% improvement in her back pain. T.230. Plaintiff was discharged from

the physical therapy clinic at ECMC on August 20, 2007, due to lack of compliance with their attendance policy. T.232.

On May 16, 2008, Plaintiff went to the emergency room at ECMC complaining of back pain. T.204-06. Her neurological examination was normal and she displayed normal stability and muscle strength and tone. T.206.  The same month, Plaintiff visited ECMC again complaining of back and left leg pain. T.237.

A lumbosacral spine x-ray revealed a hint of relative narrowing at L5-S1 with no acute abnormality, and a thoracic spine x-ray indicated a "question of mild anterior wedge involving the T9 vertebral body." Plaintiff underwent an MRI on June 11, 2008, which was interpreted by radiologist Robert Conti, M.D. His impressions were degenerative disc and facet joint changes at L5-S1 with small posterior disc protrusions and moderate acquired foraminal stenosis bilaterally; mild degenerative facet arthrosis at L3-4 and L4-5 without bony encroachment; and the remainder of the MRI was unremarkable. T.207.

In June and October, 2008, Plaintiff told physicians at ECMC that physical therapy did not provide any relief for her back pain. T.233-36, 293-94.

An x-ray of Plaintiff's thoracic spine on September 17, 2008, showed normal results. T.313.

She visited the emergency room at ECMC five more times between July and December, 2009, with complaints of back pain. T.404-05, 414-19, 446-47.

Plaintiff saw her primary care physician, Dr. Pratibha Bansal, for her back pain from September 2008, to January 2009. T.286-92. On September 25, 2008, her lumbosacral spine exhibited tenderness on palpation; straight leg raising test was negative. T.291. There was tenderness bilaterally over the L5-S1 facet joint with extensive myofascial pain present in the lower back interscapular muscles and tenderness in the mid-thoracic spine. Dr. Bansal advised Plaintiff to perform stretching exercises and attend physical therapy, and prescribed Lortab for her back pain. T.286, 291. On November 6, 2008, Plaintiff reported to Dr. Bansal that physical therapy was helping her pain considerably, though she still had pain radiating down the left side of her leg with numbness and tingling. Dr. Bansal indicated, "We will plan to return her back to work the beginning of next year." T.355.

On December 9, 2008, Plaintiff told Dr. Bansal that she had fallen down a flight of stairs three weeks ago and had been experiencing pain in her low back and back of left leg, and tingling in her right leg. T.352. She was given a lumbar epidural steroid injection on December 15, 2008, which she tolerated well. T.350-53.

On January 6, 2009, Plaintiff returned to Dr. Bansal, who noted she was having a "[m]inimal amount of myofascial pain in the lumbar paravertebral, gluteal, pyriformis and iliotibial fascia." T.349. Her urine toxicology screen results did not reveal the presence of hydrocodone from Plaintiff's prescription drugs, but did reveal cocaine and marijuana. T.349. Dr. Bansal told Plaintiff that he would not write any further narcotics prescriptions for her and suggested she attend a detoxification program. Id.

On February 25, 2010, Plaintiff visited Cleve-Hill Family Health Center alleging back pain after a fall. T.454. Straight leg raise testing and paraspinal spasms were positive on the left. T.455. Dr. Vicky Moe prescribed Robaxin and Neurontin for the back pain and spasms. T.454-55.

**B.    Consultative Examinations**

Plaintiff was consultatively examined by Dr. Kathleen Kelley on July 29, 2008. T.250-60. She complained of pain in the upper back and tailbone area, with radiating pain down the left leg, and stated that physical therapy had failed to provide relief. T.250. Plaintiff claimed she only left her home for doctor's appointments, noting that she is "just too depressed" and does not feel like doing much. T.250. Plaintiff stated that she cannot clean, does not do laundry, and "her friend does shopping because she just does not feel up to it . . . with the pain." T.251. She dresses herself only when she needs to go out and just bathes as necessary. T.251.

Dr. Kelley's physical examination of Plaintiff was unremarkable with the exception of a limited straight leg test from the supine position (but negative from the sitting position), and limited flexion and extension in the cervical spine bilaterally. T.251-52. Plaintiff stated that she was having marked discomfort in her low back in the supine position and refused to perform any lumbar spine maneuvers during examination. T.252. She had full range of motion and strength in her upper and lower extremities. A lumbar x-ray taken that day was normal. T.253.

Dr. Kelley diagnosed Plaintiff with asthma, depression, hypertension, and bulging disc of the lumbar spine (per Plaintiff) with radiculopathy as noted. T.253. Dr. Kelley stated that in her opinion, "lifting, carrying, or reaching for a markedly heavy object may aggravate" Plaintiff's lower back, as would kneeling, squatting, crawling, walking long distances, or climbing stairs for long distances. T.253-54. Dr. Kelley stated that "[b]ending or twisting appears to be markedly limited for the lumbar spine[.]" T.253. Finally, Dr. Kelley opined that Plaintiff should not be required to lie flat on her back, should avoid areas of smoke or respiratory irritants, and should avoid heights due to radiculopathy in the left leg. T.254.

The same day, Plaintiff was evaluated by consultative psychiatrist Dr. Kevin Duffy. She complained of short-term memory deficit and acknowledged alcohol abuse. T. 262. Her affect was

somewhat depressed and her mood was dysthymic. T. 263. Plaintiff denied recurrent thoughts of death or suicide, anxiety or panic. T. 262. Plaintiff's attention and concentration skills, and recent and remote memory skills appeared to be generally intact. T.263. Her insight and judgment were assessed as fair. Id.

Dr. Duffy diagnosed Plaintiff with asthma, back problems, alcohol abuse, and noted a "rule out" diagnosis of depressive disorder, not otherwise specified. T.264. He concluded that the results of his examination "appear[ed] to be consistent with psychiatric problems, but in itself this does not appear to be significant enough to interfere with [her] ability to function on a daily basis." Id. Dr. Duffy noted that individual psychological therapy and vocational training/rehabilitation "may be necessary to help [her] reenter the work force." Id.

Dr. C. Butensky, a state agency psychologist, reviewed the record on August 5, 2008, and concluded that Plaintiff's mental impairments were not severe, noting a "lack of treatment, lack of medication and lack of impact on her daily activities." T.266, 278. He opined that Plaintiff had only mild limitations in daily living, social functioning, and maintaining concentration, persistence or pace, and had experienced no episodes of decompensation. T.276.

III. **Non-Medical Evidence**

Plaintiff was born on September 18, 1972, and had a general equivalency diploma and a certificate in computers. T. 36-37. She

testified that she was disabled from asthma, hypertension, depression, and back problems, and told the ALJ she had a history of alcohol and drug abuse. T.43-45. Prior to the period at issue, Plaintiff was treated for substance abuse. T.43-45.

In her disability application, Plaintiff stated she stopped working in December, 2007, because she fell while on the job. T. 103. She alleged constant back pain that radiated down her left leg, cramping in her left leg a few times per day, and daily swelling of her right ankle. T.39-41. She took medication for her back pain, which made her drowsy, and did stretches at home. T.39-40, 43, 49.

She stated that she was depressed because she stayed at home and did not go to work due to her pain. T.42. She did not take medication or undergo treatment for her depression. T.41. Medication controlled her asthma and hypertension. T. 38, 41.

Regarding her daily activities, Plaintiff alleged that she spent about 85 percent of her day lying in the prone position. T.48-51. She could stand or sit for about 20 or 30 minutes, walk for a half-block before resting, and could lift a gallon of milk and a 20-pound bag of potatoes without a problem. T.47-48, 51. She reported no difficulties with her hands, or with pushing or pulling. T.48. Plaintiff could not climb, bend at the waist, vacuum, do laundry, make beds, do yard work, or grocery shop. She could, however, cook, sweep, wash dishes, take out the trash, and

perform personal care. T.46-48, 51. Her primary care physician did not tell her to avoid any activities due to pain. T.50.

**IV.** **Discussion**

**A.** **Step Two Error**

Plaintiff first contends that the ALJ erred at step two in finding her depression to be a non-severe impairment.  Pl. Mem. (Dkt. #7-1) at 8-10.

For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.924(c). The "severity regulation" is intended only "to screen out de minimis claims.'" Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. Tryon v. Astrue, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923.

The Court finds that substantial evidence in the record supports the ALJ's determination that Plaintiff's depression was

not severe.  Consultative psychologist Dr. Duffy concluded that
Plaintiff's psychological impairments did not appear to be
significant enough to interfere with her ability to function on a
daily basis. T. 263-64. He noted that Plaintiff had adequate social
skills, and could appropriately deal with stress. Although she had
a "somewhat depressed" affect, she denied thoughts of suicide,
anxiety, manic symptoms, and thought disorder. T. 253, 262.
Dr. Duffy opined that Plaintiff could follow and understand simple
directions and instructions; perform simple tasks independently;
maintain attention, concentration, and a regular schedule; learn
new tasks; perform complex tasks independently; make appropriate
decisions; relate adequately with others; and deal appropriately
with stress. T. 264. The State Agency review psychiatrist
Dr. Butenski concurred in the opinion that Plaintiff's mental
impairments were not severe and only mildly affected her daily
functioning. T. 266, 278.

Plaintiff asserts that she was diagnosed with Major Depressive
Disorder while seeking mental health treatment at Horizon Health.
Pl. Mem. at 10. However, her treatment at Horizon ended prior to
her alleged disability onset date, and there is no evidence that
her mental impairment deteriorated since that time. See Snell v.
Apfel, 177 F.3d 128, 136 (2d Cir. 1999) ("[F]or Snell's mental
impairments to render her disabled after the accident but before
the end of her coverage period . . . , it would have to be the case

that, during that time, her mental condition deteriorated from what it had been when she was in fact working."). Plaintiff testified at the hearing that was not taking medication for her depression symptoms, and she was not in therapy or counseling for her mental health issues. T. 41. It was not inappropriate for the ALJ to consider this failure to seek treatment for her alleged depression in determining the credibility of her complaints. See Navan v. Astrue, 303 F. App'x 18, 21 (2d Cir. 2008) (summary order) ("[T]he ALJ's finding that Navan's claims of subjective pain were not entirely credible are likewise adequately supported by substantial evidence. Despite claiming that his condition was totally disabling, Navan failed to seek regular medical treatment during the period between March 1997 and June 1999.").

For the reasons discussed above, the Court finds that substantial evidence in the record supports the ALJ's step two finding that Plaintiff's depression was not severe.

### B.  Development of the Record/RFC Finding

Plaintiff contends that the ALJ failed to develop the record as follows: (1) there was no opinion of specific functional limitation from a treating or examining source, and (2) he did not reconcile Dr. Kelley's opinion regarding Plaintiff's apparently "marked" limitation in the ability to bend with his finding that Plaintiff could perform light work. Pl. Mem. at 10-11.

The ALJ has an affirmative duty to develop the record in a disability benefits case. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). The governing statute provides that the ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination. 42 U.S.C. § 423(d)(5)(B); see also 20 C.F.R. §§ 404.1512(d), 416.912(d). However, "[t]he lack of a medical source statement from a treating physician will not make the record incomplete, see 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6), provided that the ALJ made his decision based on sufficient and consistent evidence." Dufresne v. Astrue, No. 5:12-CV-00049 (MAD/TWD).2013 WL 1296376, at *6 (N.D.N.Y. Mar. 8, 2013).

The present record contains comprehensive treatment records from Plaintiff's primary treating physician, Dr. Bansal, documenting Plaintiff's complaints of pain, physical findings, discussions with Plaintiff, and treatment plans. T.286-92, 347-59. The ALJ also obtained  a competent medical opinion regarding Plaintiff's functional limitations from consultative physician Dr. Kelley. Dr. Kelley's examination findings were largely consistent with Dr. Bansal's treatment records, the diagnostic imaging tests, and the extensive treatment notes from Plaintiff's multiple visits to ECMC and Cleve-Hill Health Center. Specifically,

the record supports Bansal's findings of a diagnosis of lumbar disc degeneration and a conservative course of treatment which included stretching, physical therapy, and medication. Thus, there was adequate evidence in the record for the ALJ to determine whether Plaintiff was disabled, and the ALJ did not err in obtaining an RFC assessment from treating source Dr. Bansal. See Hart v. Comm'r of Soc. Sec., No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012) ("[B]ecause the evidence [of record] was adequate to make a determination [as to disability], the ALJ was not required to again contact plaintiff's treating or other medical sources.") (citing 20 C.F.R. § 404.1512(e)).

Plaintiff also asserts that the ALJ did not reconcile consultative examiner Dr. Kelley's opinions that Plaintiff appeared to have a "marked" limitation in the ability to bend and that walking for "long distances" would aggravate her back pain, with his RFC finding that Plaintiff could perform light work, which requires "occasional" bending and standing/walking for up to six hours in an eight-hour workday. Pl. Mem. at 10-11; Pl. Reply at 3-4. As Plaintiff notes, "[b]oth light and sedentary work require occasional stooping or bending, occasional meaning up to one third of an eight hour day." Molina v. Barnhart, No. 04 CIV. 3201(GEL), 2005 WL 2035959, at *8 (S.D.N.Y. Aug. 17, 2005) (citing SSR 83-14 at *4; SSR 96-9p, at *8). A job in the light work category "requires a good deal of walking or standing, or . . . involves

-Page 16-

sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

Although the determination of a claimant's RFC is reserved for the Commissioner, see 20 C.F.R. § 416.927(e)(2), an RFC assessment "is a medical determination that must be based on probative medical evidence of record . . . . Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Lewis v. Comm'r of Soc. Sec., No. 00 CV 1225, 2005 WL 1899399, *3 (N.D.N.Y. Aug. 2, 2005) (citing Rosa, 168 F.3d at 79; Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted)). An ALJ may not "pick and choose" from the medical evidence only those parts that favor a finding of no disability. E.g., Lynch v. Astrue, No. 09-CV-623, 2011 WL 2516213, at *8 (W.D.N.Y. June 21, 2011) (citations omitted).

Contrary to Plaintiff's contention, the ALJ did not improperly substitute his lay opinion for a competent medical opinion, or err in rejecting portions of consultative examiner Dr. Kelley's opinion. With regard to Plaintiff's ability to bend or twist, Dr. Kelley qualified her opinion, stated that "[b]ending or twisting *appears* to be markedly limited for the lumbar spine. . . ." T. 253 (emphasis supplied). The Court notes that this portion of Dr. Kelley's opinion was based on an incomplete clinical examination, since Plaintiff refused to perform any lumbar spine maneuvers. Significantly, treating physician Dr. Bansal noted in

the fall of 2008, a few months after Dr. Kelley's consultative examination, that the plan was to "return [Plaintiff] back to work in the beginning of next year." T. 355. In addition, Plaintiff testified that Dr. Bansal and the treatment providers at Cleve-Hill did not tell her to avoid any activities.

The ALJ did not reject Dr. Kelley's opinion wholesale, inasmuch as he included in his RFC assessment a finding that Plaintiff was limited to only occasional bending, climbing, stooping, squatting, kneeling, and crawling, and thus properly considered Plaintiff's postural limitations that were established by the medical evidence. T.24.

### C.  Error in Assessing Plaintiff's Credibility

Plaintiff contends that the ALJ did not use the appropriate standards set forth in 20 C.F.R. § 416.929(c)(3) in assessing her credibility. Pl. Mem. at 16-17.

"While an ALJ 'has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding that pain, he must do so] in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (quotations omitted; alteration in original).  "If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the

ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of HHS, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

Here, the ALJ found that Plaintiff's statements regarding her symptoms were generally credible, but not to the extent alleged. T.25. In making this determination, the ALJ summarized the relevant medical evidence in the record, Plaintiff's complaints to her doctors, her treatment history, compliance with medications, and her reported activities of daily living. T.24-27. The ALJ noted multiple exams which yielded mild limitations or normal results, and detailed reported improvements in Plaintiff's condition due to physical therapy, stretching exercises, and an epidural injection. T.25-26. He further noted that there had been a large gap in treatment after January 2009, and that Plaintiff's last visit with Dr. Bansal did not reveal the presence of her prescribed pain medications. T.26.   See SSR 96-7p, 1996 WL 374186, at *7 (a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed").

Contrary to Plaintiff's assertion, the ALJ not only applied, but also recited all of the regulatory factors to be considered per 20 C.F.R. § 416.929 in his written decision. T.24-25. Accordingly,

the Court finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence in the record.

###    D.    **Failure to Call a Vocational Expert**

Plaintiff avers that the ALJ should have consulted a vocational expert because Plaintiff has significant nonexertional (postural and mental) impairments that result in limitations additional to those resulting from her exertional impairments alone. Pl. Mem. 17-18.

Generally, the Court will find that the testimony of a vocational expert is only necessary when the claimant's nonexertional impairments significantly diminish his ability to work. Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Here, the ALJ relied on Medical-Vocational Rule 202.20 and SSR 85-15 to find Plaintiff "not disabled" because her "additional [nonexertional] limitations ha[d] little or no effect on the occupational base of unskilled light work." T.28. As discussed above, the ALJ did not err in finding Plaintiff's a non-severe impairment. Plaintiff testified that she did not take medication for her depression or receive mental health therapy. T.23. The consultative psychologist found that she had appropriate social skills, the ability to deal with stress, and no evidence of impaired judgment. T.253, 262-64. With regard to her limitation in bending, the ALJ did not err in finding that she retained the ability to do occasional bending, as

discussed above. The Court notes this degree of limitation is consistent with the requirements of light work under SSR 83-10, and thus, Plaintiff's ability to perform at this exertional level was not significantly diminished. Consequently, the ALJ did not err in utilizing the Medical-Vocational Rules without obtaining the testimony of a vocational expert. <u>See</u> <u>Zabala v. Astrue</u>, 595 F.3d 402, 410-11 (2d Cir. 2010) (use of Medical-Vocational Guidelines was permissible since claimant's nonexertional limitations did not result in an additional loss of work capacity; ALJ found that claimant's mental condition did not limit her ability to perform unskilled work).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. #8) is granted. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                            S/Michael A. Telesca
                        HONORABLE MICHAEL A. TELESCA
                        United States District Judge

Dated:      Rochester, New York
              August 28, 20147